IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WARREN HAMMEL and BRIAN BLOOMFIELD, on behalf of themselves and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) Civil No.:<br>)<br>) |
| vs. | )<br>) |
| NASHVILLE CENTER FOR REHABILITATION AND HEALING, LLC, | ) COLLECTIVE ACTION COMPLAINT<br>) FOR VIOLATIONS OF THE FAIR<br>) LABOR STANDARDS ACT OF 1938<br>)<br>) |
| Defendant. | ) |

**COMPLAINT**

Come Plaintiffs WARREN HAMMEL ("Hammel") and BRIAN BLOOMFIELD ("Bloomfield") (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated ("Collective Class Members"), and for their Complaint against Defendant Nashville Center for Rehabilitation and Healing, LLC allege the following:

**I. OVERVIEW**

1. Congress passed the Fair Labor Standards Act ("FLSA") in 1938 to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers. To achieve its humanitarian goals and purposes, Section 7(a) of the FLSA "limits to 40 a week the number of hours that an employer may employ any of his employees subject to the Act, unless the employee receives compensation for his employment in excess of 40 hours at a rate 'not less than one and one-half times the regular rate at which he is employed.'" *Walling v. Helmerich & Payne,* 323 U.S. 37, 39 (1944) (citing 29 U.S.C. §207(a)).

2. Plaintiffs bring this collective action pursuant to the FLSA on behalf of themselves and all similarly situated current and former non-exempt, hourly-paid physical therapists, occupational therapists, speech therapists, and therapist assistants[1] ("Collective Class Members") who worked at the Nashville Center for Rehabilitation and Healing, LLC (the "Nashville Center") at any time since December 13, 2019 (the "Recovery Period").

3. Throughout their employment at the Nashville Center, including the Recovery Period, Plaintiffs and Collective Class Members: a) were paid an hourly rate of pay; b) were classified as non-exempt employees by Defendant; and c) regularly and routinely worked more than 40 hours in a typical workweek.

4. Throughout their employment at the Nashville Center, including during the Recovery Period, Plaintiffs and Collective Class Members regularly and routinely worked "off the clock" and/or were denied proper overtime compensation for all the hours they worked in excess of 40 in a workweek.

5. Throughout Plaintiffs' and Collective Class Members' employment at the Nashville Center, including during the Recovery Period, Defendant regularly and routinely violated the FLSA in a willful manner by failing to pay overtime to Plaintiffs and Collective Class Members at time and one-half their regular rates of pay for all hours worked in excess of forty (40) hours in a workweek.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331 & §1343.

---

[1] The term "therapist assistants" used in the Complaint includes physical, occupational and speech therapist assistants and therapy assistants.

7. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391 because Defendant is located in this District and a substantial portion of the events forming the basis of the suit occurred in this District.

### III. PARTIES

8. Plaintiff Warren Hammel is a resident and citizen of Nashville, Tennessee. His Consent Form to join this lawsuit is attached as Exhibit 1.

9. Throughout the Recovery Period, Hammel worked as a physical therapist at the Nashville Center and was paid at an hourly rate.

10. Plaintiff Brian Bloomfield is a resident and citizen of Nashville, Tennessee. His Consent Form to join this lawsuit is attached as Exhibit 2.

11. Throughout the Recovery Period, Bloomfield worked as a physical therapy assistant at the Nashville Center and was paid at an hourly rate.

12. Defendant Nashville Center for Rehabilitation and Healing, LLC is a Tennessee Limited Liability Company located in Nashville, Tennessee. Its principal office address filed with the Tennessee Secretary of State is listed as "Mark Friedman, 36 Airport Road, Suite 201, Lakewood, New Jersey 08701-7034," and its agent for service of process is listed as Corporate Creations Network Inc., 205 Powell Place, Brentwood, Tennessee 37027-7522.

13. The Nashville Center is part of the network of CareRite Centers, which are owned and operated by CareRite Centers, LLC ("CareRite").

14. Mark Friedman and Neal Einhorn are Principals and Co-Founders of CareRite.

15. CareRite advertises and promotes its business on the website careritecenters.com.

As part of its "Mission," CareRite provides the public with a link to its online Brochure, which represents that "[a]s a dynamic and fast growing rehabilitation and healthcare company, we have successfully developed premier Rehabilitation and Nursing Centers in multiple states," which include the Nashville Center.

## IV. COVERAGE UNDER THE FLSA

16. At all material times, Defendant was an employer or joint employer of Plaintiffs and Collective Class Members within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

17. At all material times, CareRite was an employer or joint employer of Plaintiffs and Collective Class Members within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

18. At all material times, Defendant has constituted an enterprise within the meaning of §3(r) of the FLSA, 29 U.S.C. §203(r).

19. At all material times, CareRite has constituted an enterprise within the meaning of §3(r) of the FLSA, 29 U.S.C. §203(r).

20. At all material times, Defendant has been an enterprise engaged in commerce, or in the production of goods for commerce, within the meaning of §3(s)(1) of the FLSA because it has had employees engaged in commerce and made an annual gross income of not less than $500,000. 29 U.S.C. §203(s)(1).

21. At all material times, CareRite has been an enterprise engaged in commerce, or in the production of goods for commerce, within the meaning of §3(s)(1) of the FLSA because it has had employees engaged in commerce and made an annual gross income of not less than $500,000. 29 U.S.C. §203(s)(1).

22. At all material times, Plaintiffs and Collective Class Members were employees of Defendant within the meaning of §3(e)(1) of the FLSA. 29 U.S.C. §203(e)(1).

23. At all material times, Plaintiffs and Collective Class Members were employees of CareRite within the meaning of §3(e)(1) of the FLSA. 29 U.S.C. §203(e)(1).

24. At all material times, the overtime provisions set forth in §6 and §7, respectively, of the FLSA applied to Defendant and to each of its hourly-paid, non-exempt employees, including Plaintiffs and Collective Class Members pursuant to 29 U.S.C. §206 and §207.

25. At all material times, the overtime provisions set forth in §6 and §7, respectively, of the FLSA applied to CareRite and to each of its hourly-paid, non-exempt employees, including Plaintiffs and Collective Class Members pursuant to 29 U.S.C. §206 and §207.

## V. FACTUAL BACKGROUND

26. The Nashville Center is a subacute care and nursing center, providing a full range of care for short-term patients and long-term residents, including rehabilitation and daily physical, occupational and speech therapies.

27. Defendant directs and oversees all aspects of operations at the Nashville Center, including physical, occupational, and speech therapy services.

28. Throughout the Recovery Period, the Nashville Center has been staffed with physical therapists, occupational therapists, speech therapists and therapist assistants who provide therapy services to short-term patients and long-term residents at the Nashville Center.

29. Throughout the Recovery Period, in addition to their clinical duties providing therapy to patients, physical therapists, occupational therapists, speech therapists and therapist assistants who work at the Nashville Center are required to perform significant administrative, clerical and

5

other non-clinical duties, including, but not limited to: a) preparing and completing initial evaluations and plans of care (therapists only); b) preparing and completing progress notes; c) preparing and completing recertification paperwork (therapists only); d) preparing and completing discharge reports (therapists only); e) preparing and completing daily treatment notes; f) preparing and completing weekly binders for management; g) reviewing charts; h) organizing treatment sessions; i) attending various meetings; j) working on insurance documents, updates and authorizations; k) speaking to and interacting with patients' family members, vendors, physicians, nurses, social workers, management and other staff; l) training; m) treatment planning; and n) housekeeping and necessary sanitation of equipment and space.

30. Throughout the Recovery Period, Defendant has maintained and enforced uniform productivity standards for all of the physical therapists, occupational therapists, speech therapists and therapist assistants who work at the Nashville Center.

31. Because Defendant only bills Medicare and private insurers for the time therapists and therapist assistants spend actually performing therapy work with patients, and in some instances, a nominal amount of the total time spent creating the initial evaluation and plan of treatment, Defendant's desire for revenues and profitability drives it to maximize the number of hours that physical therapists, occupational therapists, speech therapists and therapist assistants spend performing therapy work each day with patients.

32. Conversely, because Defendant does not bill Medicare and private insurers for the time therapists and therapist assistants spend performing essential job duties which do not involve actual therapy work with patients, Defendant's desire for revenues and profitability drives it to

6

minimize the number of hours that physical therapists, occupational therapists, speech therapists and therapist assistants spend performing these tasks each day on the clock.

33. Defendant maintains and enforces unrealistic productivity standards, requiring that an extraordinarily high percentage of the hours recorded each day by physical therapists, occupational therapists, speech therapists and therapist assistants be devoted to actual therapy work with patients for which Defendant can bill Medicare and private insurers, as opposed to other essential job duties which do not involve performing actual therapy work with patients, including those outlined in Paragraph 29 of the Complaint.

34. Defendant's productivity standards are used by Defendant as a factor in evaluating therapists and therapist assistants, and those who fall below standard face disciplinary action and/or discharge. Thus, Plaintiffs' and Collective Class Members' performance evaluations, compensation, and/or job security depend, in large part, on whether they meet Defendant's productivity standards.

35. Defendant regularly posts the productivity percentages of therapists and therapist assistants to shame and intimidate those who fall below the standards, and to put pressure on therapists and therapist assistants to meet standards.

36. In addition, in order to keep down overhead and to maximize its revenues and profitability, Defendant refuses to adequately staff the Nashville Center with a sufficient number of physical therapists, occupational therapists, speech therapists and/or therapist assistants. As a result, Plaintiffs and Collective Class Member regularly and routinely treat 10-15 patients per day, having little time between patients to devote to their other essential job duties unrelated to actually treating patients, such as charting the results of their patient therapy sessions.

37. Since the vast majority of Plaintiffs' and Collective Class Members' work days are spent performing therapy work with patients, it is not possible to meet Defendant's productivity standards within an eight (8) hour day, or forty (40) hour week, without performing a substantial amount of uncompensated, off-the-clock work, including time spent completing their administrative and other duties outlined in Paragraph 29 of the Complaint. Based on the foregoing, and in order to meet Defendant's unrealistic productivity standards, which is compounded by inadequate staffing, therapists and therapist assistants are regularly and routinely required to work "off the clock," including multiple hours each week performing the non-clinical and/or administrative and clerical duties required of them over and above their clinical therapist duties.

38. The job duties performed by Plaintiffs were and are similar to those performed by other Collective Class Members during their employment at the Nashville Center throughout the Recovery Period.

39. Throughout the Recovery Period, Defendant has maintained and enforced a policy and/or practice which prohibits or severely restricts the recording of overtime hours by therapists and therapist assistants working at the Nashville Center, including Plaintiffs and Collective Class Members; and conversely, encourages and promotes the performance of "off-the-clock" work on tasks for which Defendant cannot bill Medicare or private insurers.

40. Because of the pressure to meet Defendant's unrealistic productivity standards and Defendant's inadequate staffing, Plaintiffs' and Collective Class Members' 30-minute meal breaks are regularly not taken or interrupted by work throughout the Recovery Period because of their heavy job responsibilities.

8

Case 3:22-cv-01011   Document 1   Filed 12/13/22   Page 8 of 15 PageID #: 8

41. Throughout the Recovery Period, Defendant has automatically deducted a 30-minute lunch break from Plaintiffs' and Collective Class Members' compensable hours of work whether or not their meal breaks are not taken or interrupted by work.

42. As a result of Defendant's policies and practices alleged herein, Plaintiffs and Collective Class Members at the Nashville Center record little to no overtime, while working routinely well over 40 hours in a workweek.

43. Defendant is well aware that Plaintiffs and Collective Class Members are performing substantial amounts of off-the-clock work in order to meet Defendant's unrealistic productivity standards and because of Defendant's inadequate staffing.

44. Defendant has willfully and intentionally imposed unrealistically high productivity standards on Plaintiffs and Collective Class Members knowing that they will be forced to work off the clock to meet those unreasonable productivity standards, which the Nashville Center does in order to maximize its revenues and bottom-line profitability.

45. Hammel worked at the Nashville Center from approximately April 2020 until August 28, 2022. Throughout the Recovery Period, Hammel was assigned an inordinate number of therapy patients, which, in addition to the administrative and non-clinical duties set forth above, were impossible to complete without working "off the clock" in order to meet the unrealistic productivity standards set by Defendant.

46. Bloomfield worked full time at the Nashville Center from approximately January 7, 2018, to August 19, 2022. Throughout the Recovery Period, Bloomfield was assigned an inordinate number of therapy patients, which, in addition to the administrative and non-clinical duties set forth

above, were impossible to complete without working "off the clock" in order to meet the unrealistic productivity standards set by Defendant.

47. Throughout the Recovery Period, Plaintiffs typically worked five or more hours a week "off the clock" in order to complete all of his tasks and duties and to meet the unrealistic productivity standards set by Defendant.

48. The Consent to participate in this action of Opt-in Plaintiff Arviola Pemaj ("Pemaj") is attached hereto as <u>Exhibit 3</u>.

49. Pemaj worked as a Registered Occupational Therapist at the Nashville Center from approximately July 28, 2021, to October 13, 2022. Pemaj continues to work there on a PRN basis.

50. Similar to Plaintiffs, Pemaj was and is assigned an inordinate number of therapy patients, which, in addition to the administrative and non-clinical duties set forth above, were and are impossible to complete without working "off the clock" in order to meet the unrealistic productivity standards set by Defendant throughout the Recovery Period.

51. Throughout the Recovery Period, Pemaj often worked five or more hours a week "off the clock" in order to complete all their tasks and duties and meet Defendant's unrealistic productivity standards.

52. The experiences of Plaintiffs and Pemaj are similar to, and typical of, the experiences of Collective Class Members who also have worked significant amounts of unpaid overtime hours "off the clock" in order to meet Defendant's unrealistic productivity standards.

53. Throughout the Recovery Period, Defendant has "suffered and permitted" Plaintiffs, Pemaj and Collective Class Members to perform work "off the clock" within the meaning of 29 C.F.R. §785.11: "Work not requested but suffered or permitted is work time. For example, an

employee may voluntarily continue to work at the end of the shift…The reason is immaterial. The employer knows or has reason to believe that he is continuing to work and the time is working time."

54. The foregoing conduct, as alleged, constitutes a willful violation of law because Defendant knows or has shown reckless disregard for the fact that its compensation policies, practices and procedures violate the law.

## VI. COLLECTIVE ACTION ALLEGATIONS

55. Plaintiffs reassert and re-allege the allegations set forth above in Paragraphs 1-54.

56. The FLSA regulates, among other things, the payment of wages for overtime worked by employees who are engaged in interstate commerce or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §207(a)(1).

57. Plaintiffs bring this FLSA collective action on behalf of themselves and all other persons similarly situated pursuant to §16(b) of the FLSA (codified at 29 U.S.C. §216(b)), which provides, in pertinent part, as follows:

> An action to recover the liability prescribed in either of the preceding sentences maybe maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

58. The Collective Class consists of all current and former physical therapists, occupational therapists, speech therapists and therapist assistants who worked at the Nashville Center at any time since from December 13, 2019 (the "Recovery Period").

59. Section 13 of the FLSA, codified at 29 U.S.C. §213, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemptions from overtime pay apply to Plaintiffs, Pemaj or Collective Class Members.

11

60. The FLSA requires covered employers, such as Defendant, to compensate all non-exempt employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per workweek.

61. The FLSA requires covered employers, such as Defendant, to make, keep, and preserve accurate records of the hours worked by non-exempt employees.

62. Defendant has failed to keep accurate records of the hours worked by Plaintiffs, Pemaj and Collective Class Members.

63. Plaintiffs, Pemaj and Collective Class Members are victims of Defendant's widespread, repeated, systematic, illegal and uniform compensation policies, practices and/or procedures designed to evade the requirements of the FLSA.

64. Defendant has willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 *et seq.*, as described in this Complaint, in ways including, but not limited to, knowingly failing to pay employees overtime compensation.

65. Defendant has/had uniform policies, practices and/or procedures which required, and continue to require, Plaintiffs, Pemaj and Collective Class Members to work without proper overtime compensation in violation of the FLSA. Specifically, Defendant has required and continues to require Plaintiffs, Pemaj and Collective Members to work "off the clock."

66. Pursuant to Defendant's uniform policies, practices and/or procedures, although Plaintiffs, Pemaj and other Collective Class Members were and are required to work more than 40 hours in a work week, Plaintiffs, Opt-in Plaintiff Pemaj and other Collective Class Members were and are not paid at the rate of at time and one-half their regular rates of pay for all hours they worked beyond 40 hours in a workweek.

67. Defendant's conduct constitutes willful violations of the FLSA within the meaning of 29 U.S.C. §255.

68. Defendant is liable under the FLSA for failing to properly compensate Plaintiffs, Pemaj and Collective Class Members.

69. Plaintiffs, Pemaj and Collective Class Members are similarly situated to one another because, throughout the Recovery Period, they have shared uniform job descriptions and duties with other therapists and assistant therapists, and further, have been: 1) paid hourly; 2) classified as non-exempt; 3) subjected to Defendant's the unrealistic productivity standards; 4) subjected to Defendant's "anti-overtime" policy; and 5) subjected to Defendant's "work-through-lunch" policy.

70. There are numerous similarly-situated current and former employees of Defendant who have suffered from the common and uniform policies, practices and/or procedures of not paying therapists and therapist assistants, including Plaintiffs, Pamaj and Collective Class Members, for all of their work hours, including overtime, and who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in this action. These similarly-situated employees are known to Defendant, and are readily identifiable through Defendant's records.

71. Plaintiffs, Pemaj and Collective Class Members are entitled to damages equal to pay for all overtime hours worked at the overtime premium rate mandated by the FLSA within the three (3) years preceding the filing of the Complaint, because Defendant has acted willfully and knows, or has shown reckless disregard for whether its conduct was prohibited by the FLSA.

72. Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions are not a violation of the FLSA as alleged in the preceding Paragraphs. As a

13

Case 3:22-cv-01011   Document 1   Filed 12/13/22   Page 13 of 15 PageID #: 13

result thereof, Plaintiffs, Pamaj and Collective Class Members are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime compensation as permitted by §16(b) of the FLSA. 29 U.S.C. §216(b). Alternatively, should the Court find that the Defendant has acted in good faith and with reasonable grounds to believe it was complying with the FLSA, Plaintiffs, Pemaj and all similarly-situated Collective Class Members are entitled to an award of prejudgment interest at the applicable legal rate.

73. As a result of the aforementioned violations of the FLSA's overtime provisions, overtime compensation has been unlawfully withheld from Plaintiffs, Pemaj and Collective Class Members. Accordingly, Defendant is liable to Plaintiffs, Pemaj and Collective Class Members for unpaid overtime compensation under §16(b) of the FLSA (codified at 29 U.S.C. §216(b)), together with an additional amount as liquidated damages, pre- and post-judgment interest, reasonable attorney's fees, and costs of this action.

## VII. PRAYER FOR RELIEF

74. Wherefore, Plaintiffs, on behalf of themselves, Opt-in Plaintiff Arviola Pemaj and all other similarly-situated Collective Class Members, respectfully request that this Court grant the following relief:

    a. Designation of this action as a collective action on behalf of the Collective Class Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly-situated Collective Class Members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consents to join this lawsuit pursuant to 29 U.S.C. §216(b);

    b. An award of unpaid wages, including all overtime compensation due under the FLSA;

    c. An award of liquidated damages as a result of the Defendant's failure to exercise good faith in failing to pay lawful overtime compensation pursuant to 29 U.S.C. §216;

  d. An award of prejudgment and post-judgment interest;

  e. An award of costs and expenses of this action, together with reasonable attorney's fees; and

  f. Such other and further relief as this Court deems just and proper.

          Respectfully submitted,

          DICKINSON WRIGHT PLLC

          */s/ Martin D. Holmes*
          Martin D. Holmes, TN Bar #012122
          Autumn L. Gentry, TN Bar #020766
          424 Church Street, Suite 800
          Nashville, TN 37219
          Tel.: 615-244-6538
          Fax: 844-670-6009
          mdholmes@dickinsonwright.com
          agentry@dickinsonwright.com

          *Attorneys for Plaintiff, Opt-in Plaintiff Arviola Pemaj and Collective Class Members*

4858-9384-6595v.1 [100335-00001]